UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CRC HEALTH GROUP, INC.,
a California corporation, and
CRC RECOVERY, INC., a
Delaware Corporation,

       Plaintiffs,

vs.

TOWN OF WARREN, a Maine
municipal corporation,

       Defendant
_____/

# COMPLAINT

Plaintiffs, CRC HEALTH GROUP, INC., and CRC RECOVERY, INC., a Delaware Corporation (collectively "CRC"), hereby complain against Defendant, TOWN OF WARREN, a Maine municipal corporation, and state:

## PRELIMINARY STATEMENT

1.    This matter arises under the Americans with Disabilities Act, 42 U.S.C. 1213, *et seq*., ("ADA"). CRC seeks declaratory, preliminary, and permanent injunctive relief to enjoin the Town's conduct, as well as monetary damages against the Town of Warren ("Town"), costs and reasonable attorneys' fees.

## THE PARTIES

2.     CRC HEALTH GROUP, INC. is a Delaware corporation with its principal place of business in Cupertino, California. CRC Health Group, Inc. is the nation's leading provider of substance abuse treatment services and youth treatment services.  CRC Health Group, Inc. also provides treatment services for other addiction diseases and behavioral disorders such as eating disorders.  CRC Health Group, Inc. delivers its services through its two divisions, the recovery division and the healthy living division. The recovery division provides substance abuse and behavioral disorder treatment services through CRC Health Group, Inc.'s residential treatment facilities and outpatient treatment clinics.  The recovery division provides comprehensive care to adults and adolescents at every stage of the healing process, from detoxification, inpatient rehab treatment, and partial hospitalization or day treatment to intensive outpatient and extended care programs.  Through wholly owned subsidiaries, the recovery division operates 104 treatment facilities in 21 states and treats approximately 28,000 patients per day, which makes CRC Health Group, Inc. the largest and most geographically diversified for-profit provider of substance abuse treatment.

3.     CRC RECOVERY, INC., a Delaware Corporation, is wholly owned and operated by CRC Health Group, Inc. and is part of the recovery division of CRC Health Group, Inc.  It is authorized to do business in the State of Maine as

Midcoast Treatment Center ("Midcoast"), and is licensed by the State of Maine Department of Health and Human Services as an outpatient methadone treatment facility, subject to zoning approval by the Town.

4. CRC Recovery, Inc.'s substance abuse treatment programs are subject to the confidentiality provisions of 42 U.S.C. Section 290dd.

5. CRC Health Group, Inc. and CRC Recovery, Inc. d/b/a Midcoast (collectively "CRC") is or will be a treatment provider and as such is a "person alleging discrimination on basis of disability" under the Americans with Disabilities Act of 1990 ("ADA"), § 203, 42 U.S.C. § 12133 and 28 C.F.R. § 35.130(g) who has been injured by the Town's discriminatory conduct and has suffered damages, economic loss and a loss of civil rights as a result of the Town's conduct. Further, CRC provides services to or is otherwise associated with individuals with disabilities, namely its patients who are in active recovery from alcohol or drug abuse.

6. As alleged further below, CRC's future patients are considered people with disabilities under the ADA, and therefore a protected class. Under the ADA, laws that apply only to individuals with disabilities are facially discriminatory. Thus, it is unlawful for a local government to treat a substance abuse treatment program differently from other health or medical care services. In addition, a local government's refusal to make a reasonable accommodation from its zoning laws

constitutes another form of discrimination under the ADA.

7. Because it is licensed as a methadone clinic, CRC is or would operate a methadone clinic within the meaning of the Town's recent zoning moratorium on all methadone clinics. Methadone clinics are land uses for people in active recovery from substance abuse.

8. The Town is a Maine municipal corporation. As such, it is and was acting under color of state law. The Town exercises enforcement and interpretive authority over zoning ordinances, and otherwise provides zoning services.

9. All actions complained of herein occurred in Knox County.

## INTRODUCTION

10. By this action, CRC challenges as facially discriminatory under the ADA the Town's moratorium on methadone clinics.

11. In addition, CRC challenges the Town's delay in processing CRC's request for a reasonable accommodation from these discriminatory acts or requirements.

## FACTS

12. CRC provides treatment services both on an inpatient and outpatient basis to patients suffering from chronic addiction diseases and related behavioral disorders. The majority of CRC's treatment services are provided to patients who abuse addictive substances such as alcohol, illicit drugs or opiates, including

prescription drugs. CRC Operates 54 comprehensive treatment clinics in 21 states, all of which are accredited by either the Joint Commission or the Commission on Accreditation of Rehabilitation Facilities.

13. CRC's outpatient services are provided to individuals addicted to heroin and other opiates, including prescription analgesics. Substantially all of CRC's patients addicted to heroin and other opiates are treated with methadone, but a small percentage of its patients are treated with other medications such as buprenorphine. Patients usually visit an outpatient treatment facility once a day in order to receive their medication. During the beginning of their treatment program, patients receive weekly counseling and as they successfully progress in the treatment protocol, they continue to receive counseling each month. This mandatory minimum duration of counseling may vary from state to state. Following the initial administration of medication, patients go through an induction phase where medication dosage is systematically modified until an appropriate dosage is reached. As patients progress with treatment and meet certain goals in their individualized treatment plan and certain federal criteria related to time in treatment, they become eligible for up to 30 days of take-home doses of medication, eliminating the need for daily visits to the clinic. The length of treatment differs from patient to patient, but typically ranges from one to three years.

14. CRC engaged Vixen Land Holdings, LLC, to locate an appropriate site for a comprehensive treatment clinic (a methadone clinic under the Town's ordinance) in the mid-coast area of Maine after the only one in the region closed last year.

15. CRC engaged Vixen Land Holdings, LLC, a local developer, to locate an appropriate site.

16. Eventually, Vixen located one in the Town. CRC seeks zoning approval to operate a methadone clinic in the Town.

17. On October 7, 2010, Vixen through its principal Bob Emery applied to the Town for a site plan review for Business and Professional Offices as permitted by Section 16(S), Land Use Standards, Town of Warren Land Use Ordinance, which is defined in Section 18(C) to include the "place of business for doctors, . . . psychiatrists, psychologists, counselors, but not including financial institutions or personal services."[1]

18. At that time, nowhere in the Town Land Use Ordinance were methadone clinics defined or excluded. The proposed clinic is most comparable to a medical office use, which is a permitted use in this zoning district.

19. The Fire Department, Road Commissioner, Code Enforcement Officer

---

[1] On October 6, 2010, the day before Vixen Land Holdings submitted its application, Vixen and CRC met with the Town of Warren Selectmen/Assessors and the Town's Code Enforcement Officer, Bill O'Donnell, wherein Vixen and CRC fully disclosed the nature of this proposed use.

6

and Sanitary District all signed off on the site plan review. A Planning Board Permit No. 1975TB was signed by the Town's Code Enforcement Officer, Bill O'Donnell, on November 5, 2010.

20.   Shortly thereafter, on December 2, 2010, on extremely short notice, and in response to vocal community prejudice against people in recovery from opiate addiction, a warrant for Special Town Meeting was issued for the purpose of enacting an ordinance entitled, "an ordinance to enact a moratorium on methadone clinics" be enacted. The vocal community prejudice included the following comments: "We do not want these people in our town"; "Go back to Rockland"; "We do not want a methadone clinic in our town"; and "You are shameless bringing addicts here." Many members of the audience wore "Methadon't" buttons. Another carried a sign apparently referring to CRC as "Weasels who push synthetic heroin." At that same meeting, the Planning Board revoked the building permit.

21.   On December 13, 2010, a Board of Selectmen/Assessors meeting was held whereupon the moratorium was enacted, retroactive to all pending applications. Putting aside the Board's blatant violations of Federal law, there was absolutely no evidence before it to sustain the findings required to adopt a moratorium.

22.   On December 27, 2010, CRC sent the Town a letter requesting a

reasonable accommodation under the ADA stating: A) that the blanket moratorium on methadone clinics throughout the Town, while allowing comparable medical uses, constituted facial discrimination under the ADA; B) that the Town's actions in first approving the requested use and then withdrawing the approval in the face on community prejudice constituted intentional discrimination under the ADA; and C) alternatively, that CRC requested a reasonable accommodation under the ADA. (Exhibit A).

23. On December 30, 2010, the Town's attorney responded, stating that CRC lacked standing to claim discrimination under the ADA. (Exhibit B).

24. On January 13, 2011, CRC responded, citing dozens of cases supporting its claim for provider and organizational standing, stating:

> At the outset, I would like to state that my client, CRC Health Group, Inc. ("CRC"), would prefer not to engage in a legal battle but it has filed these suits when local governments blatantly violate federal law and are unwilling to work with the disabled and those that provide services to the disabled to accommodate them. <u>I again respectfully urge your client to reinstate the zoning or sit down with my client to propose an alternate location that would be acceptable to both the town and my client.</u> Alternatively, my client will have no choice but to file suit in federal court.
>
> That said, your December 27th letter questioned CRC's standing as a provider of services to bring suit in federal court people with disabilities. Apparently you overlooked pages five through six of my December 27th letter, where I cited numerous cases establishing CRC's standing under Title II of the ADA:
>
> Treatment providers such as the Applicant and CRC have standing to raise the ADA rights both of themselves and their patients.

8

> *Andrews v. State of Ohio*, 104 F. 3d 803, 807 (6th Cir. 1997); *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F. 3d 725, 731 (9th Cir. 1999); *Innovative Health Systems, Inc.*, 117 F. 3d at 44-46; *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 407 (3d Cir.2005)(methadone clinic providers may assert both direct standing based on their own injuries and associational standing based on injuries to the disabled individuals they serve). This is because the enforcement provision of the ADA broadly refers to "any person," not solely disabled individuals. *Cf. Helen L. v. DiDario,* 46 F.3d 325, 331 (3d Cir.1995) (characterizing overall language in Title II of the ADA as "broad").
>
> As a provider of services to people with disabilities, CRC has broad standing under the ADA to bring this suit independently and on behalf of its patients. CRC has "organizational standing" - standing to sue independently - because the Town's conduct impaired its ability to achieve its organizational goals and forced it to spend time and money seeking to overturn this discriminatory moratorium and denied its patients needed treatment during this moratorium.

(Exhibit C)(emphasis added).

25. In response to the January 13th letter, the Town attorney agreed to get back to CRC's lawyer within a couple days on CRC's offer to consider an alternative site, but never did. Further, the Town has ignored CRC's reasonable accommodation request.

26. As a result of the Town's actions, CRC is in doubt about its rights under the ADA, state law, and the Town's zoning ordinances, the validity of those ordinances, and has a right to obtain a declaration of rights or other equitable or legal relations thereunder.

27. CRC has hired the undersigned and agreed to pay them reasonable

attorneys' fees.

28. CRC has attempted to resolve this amicably but to no avail.

29. CRC has satisfied all conditions precedent and, to the extent that there are any administrative remedies available and required by law to be exhausted, has exhausted them or determined them to be futile.

30. Loss of treatment services is direct and imminent because of the Town's refusal to provide CRC with reasonable accommodations as required by law. CRC, and its disabled patients, will suffer irreparable injury if this Court does not issue a preliminary and permanent injunction. The loss of rights protected by Americans with Disabilities Act is so serious that, as a matter of law, irreparable injury is presumed. CRC has no adequate remedy at law.

## **STATUTORY AND REGULATORY FRAMEWORK**

31. The ADA requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination of any such entity. 42 U.S.C. § 12132.

32. The federal regulations implementing the ADA prohibit a public entity from discriminating against a qualified individual with a disability in administering a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity

establish requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability. 35 C.F.R. 35.130(6).

33. The federal regulations also make it unlawful for a public entity in determining the site or location of a facility that has the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination. 35 C.F.R. 35.130(4)(I).

34. CRC's patients are qualified persons with disabilities that affect one or more major life activities of central importance to most people's daily lives, including abstaining from alcohol or drug abuse and living independently without a structured supportive setting and a sober housing environment. CRC's criteria for admission to its treatment program are that each of CRC's patients be diagnosed as suffering from opiate dependence, and participate or agree to participate in drug treatment. CRC's patients are not currently illegally using controlled substances. As such, its patients are "qualified persons with disabilities" within the meaning of the ADA, 42 U.S.C. § 12102(2) and 28 C.F.R. 35.104.

35. The Town is treating CRC and its patients in a discriminatory fashion, and is imposing far more stringent land use requirements on methadone providers than it imposes upon comparable medical uses for patients who are not suffering from chemical dependency.

## COUNT I
### (Declaratory Relief on the ADA claims)

36. CRC incorporates and realleges paragraphs 1 through 34 as if fully rewritten herein.

37. CRC is in doubt about its rights, status or other equitable or legal relations which are affected by part of the Town's zoning code, regulations made under statutory authority, and the failure or refusal to make a reasonable accommodation thereto, and seek a declaration of rights, status or other equitable or legal relations thereunder.

38. There is a bona fide, actual present need for the declaration.

39. The declaration deals with a present, ascertainable state of facts or present controversy.

40. Some immunity, power, privilege or right of the complaining parties is dependent on the facts or the law applicable to the facts.

41. CRC and its patients have an actual present and antagonistic interest in the subject matter of the Town's zoning ordinances, either in law or fact.

42. The antagonistic interests are all before the court by proper process.

43. The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded by curiosity.

44. If a declaratory judgment is not granted, the rights of parties may be seriously affected and one or more parties may be harmed and continue to be

harmed.

WHEREFORE, CRC respectfully requests this court:

A. Declare that the Town moratorium which prohibits methadone clinic providers but not other medical providers, violates the ADA;

B. Declare that the Town moratorium which prohibits methadone clinics, but allows other medical provider uses as permitted uses, violates the ADA;

C. Declare that CRC and its patients are entitled to a reasonable accommodation as a matter of law; and,

D. Award costs and attorneys' fees.

## COUNT II
### (Americans with Disabilities Act)

45. CRC realleges and incorporates herein by reference paragraphs 1-35 above.

46. Defendant Town is violating CRC's and its patients' rights under the Americans with Disabilities Act, 42 U.S.C. Sections 12101, *et seq.*, and its implementing regulations by:

A. Discriminating against CRC and its patients, denying and otherwise making treatment unavailable to them because of their disability;

B. Applying the Town zoning laws in an arbitrary and capricious manner thereby denying CRC and its patients their choice of treatment within the boundaries of the Town;

C.  Discriminating against CRC and its patients because of the disability of the patients in the terms, conditions, and privileges of receiving treatment in the Business and Professional Offices district and in the provision of services and facilities in connections with those uses; and

D.  Employing its zoning code to banish and reject CRC and its patients because of their disability.

WHEREFORE, CRC respectfully requests this court:

A.  Enjoin the Town from applying its moratorium to CRC and its patients;

B.  Enjoin the Town to treat CRC's proposed clinic as a permitted use;

C.  Enjoin the Town to grant CRC's request for a reasonable accommodation;

D.  Award CRC frustration of mission damages; and

E.  Award costs and attorneys' fees.

Respectfully submitted,

Date:  May 12, 2011               s/Walter F. McKee

WALTER F. MCKEE
Lipman, Katz & McKee, P.A.
227 Water Street
P.O. Box 1051
Augusta, Maine   04332
(207) 622-3711

s/James K. Green

JAMES K. GREEN, Esq.
James K. Green, P.A.
Suite 1650, Esperante
222 Lakeview Ave.
West Palm Beach, FL  33401
Telephone: (561) 659-2029
Facsimile:  (561) 655-1357
(*pro hac vice* application pending)


COUNSEL FOR CRC