UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| CRC HEALTH GROUP, INC. AND<br>CRC RECOVERY, INC., | )<br>)<br>) |
| PLAINTIFFS | )<br>) |
| v. | )    CIVIL NO. 2:11-CV-196-DBH<br>) |
| TOWN OF WARREN, | )<br>) |
| DEFENDANT | )<br>) |
| v. | )<br>) |
| ROBERT EMERY AND VIXEN<br>LAND HOLDINGS, | )<br>)<br>) |
| INTERVENORS | ) |

**ORDER ON MOTION TO ENFORCE SETTLEMENT**

The plaintiffs and intervenors resist the defendant Town of Warren's Motion to Enforce Settlement, which would require dismissal of this lawsuit. After oral argument on September 17, 2012, I conclude that the Town has not yet satisfied a critical condition of the Settlement Agreement. I therefore **DENY** the motion.

This federal lawsuit started out as a complaint under the Americans with Disabilities Act (ADA) arising out of the plaintiffs' and intervenors' unsuccessful efforts to obtain the necessary permits to open a methadone clinic within the Town. The parties proceeded to mediation and generated a "settlement agreement and mutual release of claims" ("Settlement Agreement"). Thereafter,

this court delayed proceedings on several occasions to permit the Settlement Agreement to be implemented. Now the Town says that it has done all that it was required to do under the Settlement Agreement and that this underlying federal lawsuit should be dismissed.

The dispute involves both the meaning of the Settlement Agreement's terms and the roles of Town entities. Specifically, the Town argues that the Planning Board has given its final written approval to the plaintiffs' new site application and therefore that the lawsuit must end, the plaintiffs receiving the cash settlement of $320,000 provided by the Agreement and the liability releases of the Agreement becoming effective. The plaintiffs disagree, saying that abutters have appealed the Planning Board's 3-2 decision to the Town's Board of Appeals, and that until that Board makes its decision, there is no final decision by the Town.

The Settlement Agreement is between the Town, on the one hand, and the plaintiffs and intervenors, on the other hand. (The plaintiffs sued only the Town of Warren.) The document states: "If the Town approves the [opiate treatment clinic], the Town agrees to pay [the plaintiff] CRC $320,000 within thirty (30) days of such *final written approval*," Settlement Agreement ¶ 3 (emphasis added) (ECF No. 44-1), and the plaintiffs then are barred from resuming the lawsuit. The Agreement also states:

> The Town shall grant all necessary approvals and permits at a site other than the Old Brick School [the site that was first rejected] with reasonable accommodations for hours of operation . . . and spacing (setbacks) within 90 days of receipt of a complete application from CRC that complies with the Large Facility Ordinance. The Town will

2

> cap annual review fees at $400, and the nature and format of annual reviews shall be fair and reasonable.

Settlement Agreement ¶ 10 (ECF No. 44-1). Although the Settlement Agreement refers to the Town repeatedly, it mentions the Planning Board only five times: in the seventh and eighth "Whereas" clauses, it mentions the intervenors' earlier application for a site plan review permit (Seventh), and the Planning Board's issuance then rescission of the permit (Eighth); in the thirteenth and final "Whereas" clause, the Agreement states that the plaintiffs submitted their latest application to the Planning Board during the week of October 10, 2011, for two alternative opiate treatment clinic locations; and finally in paragraph 10, following the paragraph partially quoted above, it states:

> If the Planning Board or the Town imposes fees or conditions that are unacceptable to CRC, then CRC may request, and the Town will agree, to request that Hon. Daniel Wathen serve as a mediator to advise the Planning Board or other relevant Town entity, at the parties' joint expense, in resolving the dispute.

Settlement Agreement ¶ 10 (ECF No. 44-1.)

It is undisputed that the Planning Board's decision is subject to appeal under both the site plan review provisions of the Town's zoning ordinance and under the recently enacted Large Facilities provisions. According to the latter:

> The Warren Board of Appeals shall hear and decide appeals, on a de-novo basis, where it is alleged by an aggrieved party that there is an error in any order, requirement, decision, or determination made by, or failure to act by the Planning Board in the administration of this ordinance.

Warren, Me. Land Use Ordinance § 16.V.3(b) (2012).[1]

Under these circumstances, the conclusion is inescapable that the Town has not yet provided "final written approval."[2]  That will occur only if and when the Board of Appeals acts favorably.  The Board of Appeals acts on behalf of the Town, just as the Planning Board does.  Until they both have approved the application, the Town has not acted finally.[3]  The Town's lawyer argued that the Town cannot control the Board of Appeals' decision.  That may be so (the same can be said of the Planning Board's decision), but that does not make the Planning Board's decision a final Town decision.  I recognize that in seeking to have this court delay proceedings, the plaintiffs recurrently have referred to the need for the Planning Board's decision and did not mention the Board of Appeals.  But that does not amount to a basis for judicial estoppel.  The Planning Board's approval was the event for which all were waiting and, at the time, no appeals had been taken.

The language of the Settlement Agreement is clear.[4]  The Town's "final written approval" has not yet occurred.[5]  Thus, there is no basis to grant the

---

[1] The written arguments do not address the applicable standard of review for a site plan review appeal.

[2] Moreover, it is impossible to know whether the Town will impose "fees or conditions that are unacceptable to CRC," Settlement Agreement ¶ 10 (ECF No. 44-1), until after the Board of Appeals' action on the appeal.

[3] The Maine Superior Court would not review the Planning Board's decision, but would await the Board of Appeals' decision.  See, e.g., Cushing v. Smith, 457 A.2d 816 (Me. 1983) (appeal must be taken to Zoning Board of Appeals before seeking judicial review in Superior Court).

[4] The Town argues that the Agreement did not allow enough time for both Planning Board and Board of Appeals review.  Maybe so, but that does not change the clear language of the agreement.

[5] The Town argues that this interpretation of the Agreement makes it illusory because the plaintiff itself could appeal the Planning Board's favorable decision, thereby preventing it from becoming final.  Def.'s Mot. to Enforce Settlement and Incorporated Mem. of Law 5 (ECF No. *(continued next page)*

4

motion to enforce settlement that would result in the termination of the lawsuit.  The motion to enforce settlement is **DENIED**.

    **SO ORDERED.**

    **DATED THIS 18TH DAY OF SEPTEMBER, 2012**

                                        /S/D. BROCK HORNBY
                                        **D. BROCK HORNBY**
                                        **UNITED STATES DISTRICT JUDGE**

---

48).  That is not a persuasive argument.  In fact, the plaintiff has not appealed.  If it did appeal a favorable ruling, a court could find that to be contrary to the Agreement, especially since the Agreement has a specific provision for what to do if the Planning Board or Town imposes fees or conditions unacceptable to the plaintiffs.