UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| **CRC HEALTH GROUP, INC.** AND **CRC RECOVERY, INC.**, | ) ) ) | |
| PLAINTIFFS | ) ) | |
| AND | ) ) | |
| **ROBERT EMERY** AND **VIXEN LAND HOLDINGS, LLC**, | ) ) ) | CIVIL NO. 2:11-CV-196-DBH |
| INTERVENOR PLAINTIFFS | ) ) ) | |
| v. | ) ) | |
| **TOWN OF WARREN**, | ) ) | |
| DEFENDANT | ) | |

**DECISION AND ORDER ON MOTION TO DISMISS**

The background to this case is asserted hostility by the Town of Warren to a proposed methadone clinic and its patients. The clinic itself has sued the Town under Title II of the Americans with Disabilities Act ("ADA") for discriminatory zoning and related conduct. The clinic's would-be landlord also has sued the Town by intervening in the clinic's lawsuit. The issue raised in this motion to dismiss the landlord's claims is whether the landlord has standing to assert ADA discrimination complaints. I conclude that the landlord has not pleaded a sufficient relationship with disabled individuals to establish so-called associational discrimination under the ADA, and I **GRANT** the defendant's motion to dismiss.

**FACTS AND PROCEDURAL HISTORY**

I state the relevant facts as pleaded in the Second Amended Complaint in Intervention. The plaintiffs CRC Health Group, Inc. and CRC Recovery, Inc. (collectively "CRC") operate methadone clinics. They engaged Robert Emery and Vixen Land Holdings, LLC,[1] the intervening plaintiffs whom I sometimes call "landlord," to find them a location in mid-coast Maine in which to open such a clinic. Emery and Vixen are not disabled individuals. Emery and Vixen found CRC a location, an empty and unused school building in the Town of Warren. Vixen proceeded to enter into a contract with the Town to buy the property and obtained the necessary permits, planning to lease the site to CRC. When matters became public, however, there was a popular outcry, and the Town enacted an emergency moratorium to prevent the clinic's opening. The Town also refused to sell the site to Vixen. Ultimately, a new ordinance was adopted that also affected the proposed clinic, but in the meantime this lawsuit commenced. The parties at one point entered into a settlement agreement, but the Town did not satisfy a condition of the settlement and the case was subsequently returned to the active docket. See Order on Mot. to Enforce Settlement (ECF No. 56). Now the Town has moved to dismiss the landlord's claims.

The landlord's Second Amended Complaint in Intervention (ECF No. 67) has three counts. The first seeks declaratory judgment that the moratorium and the new ordinance violate the ADA and that the landlord has been denied a

---

[1] Emery is the principal of Vixen, a real estate business involved in the purchase, sale, and development of real estate.

reasonable accommodation. The second seeks the same declaratory relief but adds a request for compensatory damages. The third is a state law claim for breach of contract for the Town's ultimate refusal to sell the property to the landlord.

The Town has moved to dismiss with prejudice the first two federal counts for lack of standing under the ADA and, once the federal claims are gone, to dismiss without prejudice the state breach of contract claim, which could then be pursued in state court.

## ANALYSIS

There are three types of standing to pursue relief under the ADA by a person or entity who is not him/herself disabled—namely third-party standing, associational standing, and associational discrimination standing. See A Helping Hand, LLC v. Baltimore Cnty., Md., 515 F.3d 356, 363 n.3 (4th Cir. 2008). As a result of the briefing on this motion, it is now clear that Vixen and Emery claim only associational discrimination standing. In other words, they claim that the Town discriminated directly against them because of their protected associations and relationships. (The Second Amended Complaint in Intervention does not actually state it that clearly, but the intervening plaintiffs' legal memorandum makes clear that this is their claim. See Intervenors' Resp. in Opp'n to Def.'s Mot. to Dismiss and Incorporated Mem. of Law 1, 8 (ECF No. 76).)

The lawsuit here is under Title II of the ADA, the public services provision. Unlike Titles I and III, Title II does not have an explicit provision allowing lawsuits for discrimination when the claimants are claiming

3

discrimination because they associated with people who are disabled. But at Congressional request, see 42 U.S.C. § 12134(a), the Department of Justice has promulgated a regulation. It states: "A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity *because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.*" 28 C.F.R. § 35.130(g) (emphasis added). A number of cases recognize the Department of Justice's authority to issue the regulation. See, e.g., A Helping Hand, 515 F.3d at 362-64; Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 405-06 (3d Cir. 2005); MX Group, Inc. v. City of Covington, 293 F.3d 326, 334-35 (6th Cir. 2002).

    Vixen and Emery have alleged plenty of facts to show their relationship and association with the clinic itself. But they have failed to allege any facts that show a relationship or association with any disabled individual. Although they have cited a number of cases[2] where clinics were allowed to sue because of *their* relationship to their individual patients, they have found no case that recognizes such a right to sue on the part of a person or entity once removed, as here, where the facts alleged show that Vixen and Emery have associated only with the clinic entities, not the patients themselves. Vixen and Emery rely upon a hypothetical that the judge used in RHJ Med. Ctr., Inc. v. City of DuBois, 754 F. Supp. 2d 723, 737 (W.D. Pa. 2010). There, the judge reasoned that "[i]f a plumbing business performed sewage work for a home of disabled

---

[2] See, e.g., A Helping Hand, 515 F.3d at 362-64; Addiction Specialists, 411 F.3d at 405-07; MX Group, 293 F.3d at 331-36.

persons, and a local government decided not to hire that plumbing business because of its association with disabled persons," the plumbing business would have standing to sue under the ADA.  But the relationship in the hypothetical was with the "disabled persons," not the relationship that Vixen and Emery have alleged here.  The Department of Justice has issued a Technical Assistance Manual to help interpret Title II.  In its section dealing with "Discrimination on the basis of association," it speaks consistently of discrimination based upon a relationship or association with "persons who have disabilities," and "the individual or individuals with disabilities."  Dep't of Justice, The Americans with Disabilities Act: Title II Technical Assistance Manual § II-3.9000 (1993).  It says that the offending public entity must know of "the individual's disability."  Id.  Those statements do not fit Vixen's and Emery's relationship to the clinic.  The Manual's illustrations too are consistent (discrimination against a child whose brother has HIV disease; discrimination against the sister of a child with cerebral palsy).  There is one possibly ambiguous illustration.  "Illustration 2: A local government could not refuse to allow a theater company to use a school auditorium on the grounds that the company has recently performed at an HIV hospice."  Id.  Although that illustration does not explicitly say that the theater company had an association with disabled individuals, that is its only logical interpretation since a theater company necessarily performs before an audience of individuals.[3]

---

[3] Vixen and Emery also rely upon Schneider v. Cnty. of Will, 190 F. Supp. 2d 1082 (N.D. Ill. 2002), where the pro se plaintiffs were both the owner and lessee of a property to be used as a bed and breakfast that could serve disabled guests.  But there is no suggestion in the opinion
*(continued next page)*

5

Certainly one could craft an argument for allowing persons or entities once removed (like Vixen and Emery) to sue, in order to increase opportunities to deter discriminatory behavior. One could also craft a contrary argument on the basis that sufficient enforcement is achieved by allowing the person or entity with the relationship or association to disabled individuals to sue—here the Clinic, which is in fact suing.[4] But I do not resolve those arguments. I simply follow the clear language of the regulation. Vixen and Emery have not alleged that the Town discriminated against them "because of the known disability of an individual with whom [Vixen and Emery are] known to have a relationship or association."[5] 28 C.F.R. § 35.130(g).

I therefore grant the motion to dismiss the two federal claims. That leaves only the state law claim. Under 28 U.S.C. § 1367(c)(3), I dismiss that state law claim without prejudice.

The motion to dismiss is **GRANTED WITH PREJUDICE** as to Counts 1 and 2, and **WITHOUT PREJUDICE** as to Count 3.

**SO ORDERED.**

**DATED THIS 19TH DAY OF FEBRUARY, 2013**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

that any standing issue was raised as to the owner, and indeed the operation appears to have been something of a joint venture with a 50/50 sharing of the operating profits.

[4] There might be no end to the number of entities (for example, service people and suppliers) who could claim a relationship to an entity like a clinic and thereby have standing.

[5] Cf. Oliveras-Sifrev. P.R. Dep't of Health, 214 F.3d 23, 26 (1st Cir. 2000) (under Title I, mere advocacy on behalf of disabled persons is insufficient and "a specific association with a disabled individual" is required).